UNR INDUSTRIES, INC., Unarco Industries, Inc., and Eagle Picher Industries, Inc., Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee.

KEENE CORPORATION, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

Nos. 89–1638, 89–1639 and 89–1648.

United States Court of Appeals, Federal Circuit.

April 23, 1992.

Joe G. Hollingsworth, Spriggs & Hollingsworth, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were William J. Spriggs, Paul G. Gaston and Catherine B. Baumer, of counsel.

John H. Kazanjian, Anderson, Kill, Olick & Oshinsky, P.C., New York City, argued for plaintiff-appellant. With him on the brief were John E. Kidd, Walter G. Marple, Jr. and Arthur S. Olick. Also on the brief were Paul C. Warnke, Harold D. Murry, Jr., and Philip H. Hecht, Howrey & Simon, Washington, D.C.

Robert M. Loeb, Civil Div., Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle. Also on the brief were J. Patrick Glynn and David S. Fishback, Torts Branch, Civil Div., Dept. of Justice, of Washington, D.C.

Sidney S. Rosdeitcher, David G. Bookbinder, Theodore F. Haas and Robert N. Kravitz, Paul, Weiss, Rifkind, Wharton & Garrison, of New York City, were on the brief for amicus curiae, GAF Corp.

Before NIES, Chief Judge, RICH, NEWMAN, ARCHER, MAYER, MICHEL, PLAGER, LOURIE, CLEVENGER, and RADER, Circuit Judges.

MAYER, Circuit Judge.

This is a rehearing in banc of an appeal from the United States Claims Court, 17 Cl.Ct. 146 (1989), which dismissed the cases of UNR Industries, Inc., Eagle–Picher Industries, Inc., and Keene Corporation because it lacked jurisdiction under 28 U.S.C. § 1500 (1988). An earlier judgment and the opinion of this court, 911 F.2d 654 (Fed.Cir.1990), were vacated, 926 F.2d 1109 (Fed.Cir.1990). We now affirm the judgment of the Claims Court.

*Background*

Appellants, manufacturers of asbestos products or suppliers of asbestos, sued in the Claims Court for indemnification by the government against liabilities incurred in personal injury suits brought against them by shipyard workers exposed to asbestos. As of the filing of the Claims Court actions, each of the appellants had cases based on the same facts pending in federal district courts. Therefore, the Claims Court dismissed their suits on the authority of 28 U.S.C. § 1500, which reads:

The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

We set out here only a brief description of the appellants and their activities. A more comprehensive scenario is contained in the Claims Court opinion. UNR Industries, Inc. (UNR) and Eagle–Picher Industries, Inc. (Eagle–Picher) are among the many defendants in *In re All Maine Asbestos Litigation*, Master Asbestos Docket (D.Me.), a consolidation of 225 suits brought by present or former shipyard workers or their representatives claiming injury from exposure to asbestos at the Bath Iron Works, a private shipyard, and the Portsmouth Naval Shipyard, both in Maine. On July 21, 1982, the defendants in that litigation, including UNR and Eagle–Picher, filed third-party complaints for contribution or indemnification against the United States in the United States District Court for the District of Maine. The third-party complaints were drafted pursuant to model complaints and were based on theories of negligence, strict liability, and breach of warranty. Model Complaint A dealt with injuries allegedly incurred at the Bath Iron Works, while Model Complaint B dealt with injuries alleged at the Portsmouth Naval Shipyard. On January 16, 1984, UNR sued the United States in the Claims Court, No. 16–84C, for breach of contract based on warranties allegedly arising from the government's role in the use of asbestos in the shipyards. The Claims Court's jurisdiction over this suit is at issue today.

On July 16, 1986, the district court issued a final order dismissing Model Third–Party Complaint B. *In re All Maine Asbestos Litigation (Portsmouth Naval Shipyard Cases)*, Master Asbestos Docket (D.Me.); *see also* 772 F.2d 1023 (1st Cir.1985); 581 F.Supp. 963 (D.Me.1984). And on March 12, 1987, the court dismissed the last claims of Model Third-party Complaint A. *In re All Maine Asbestos Litigation (Bath Iron Works Cases)*, 655 F.Supp. 1169 (D.Me. 1987), *aff'd*, 854 F.2d 1328 (Fed.Cir.1988).

Eagle–Picher is also a defendant in cases in the Western District of Washington for asbestos-related injuries suffered by workers at the Puget Sound Naval Shipyard. As part of this litigation, on February 3, 1983, Eagle–Picher filed ten third-party complaints founded on theories of negligence, breach of warranty, and admiralty against the government. These complaints were dismissed for failure to state a claim on May 19 and June 30, 1986. *Lopez v. Johns–Manville*, 649 F.Supp. 149 (W.D.Wash.1986), *aff'd sub nom. Lopez v. A.C. & S., Inc.*, 858 F.2d 712 (Fed.Cir.1988).

On March 25, 1983, Eagle–Picher sued the government in the Claims Court to recover money paid for litigating and settling claims arising from asbestos-caused injuries. No. 170–83C. It relies on contractual theories that the government created warranties by specifying the use of asbestos and by controlling the workplace. The Claims Court's jurisdiction over this lawsuit is at issue.

Along with eight other asbestos suppliers, in 1978 Keene Corporation (Keene) was sued by the representative of a laborer allegedly injured by asbestos exposure in 1943. *Miller v. Johns–Manville Bldg. Products*, No. 78–1283E (W.D.Pa. filed Nov. 8, 1978). On June 1, 1979, Keene initiated a third-party complaint against the government, demanding indemnification or contribution because the asbestos was either supplied by, or according to the specifications of, the government. Although Keene moved to dismiss this third-party action on April 23, 1980, it is unclear whether the court acted on the motion; regardless, Keene has accepted a dismissal date of May 13, 1980.

On December 21, 1979, Keene sued in the Court of Claims on the theory that the government as an asbestos supplier and as the regulator of the workplace had made and breached various warranties appertaining to asbestos. No. 579–79–C (*Keene I*). It is seeking damages growing out of more than 5,000 suits filed against it by persons alleging injuries from asbestos exposure as early as the mid–1930's. Jurisdiction over this suit is at issue.

On January 22, 1980, Keene sued the government in the District Court for the Southern District of New York under the Federal Tort Claims Act for what it spent defending and settling thousands of lawsuits alleging asbestos-related injuries incurred as far back as the 1930's. It based this suit on theories of breach of warranty, negligence, strict liability, and the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8193 (1976). On September 30, 1981, the court dismissed the suit as barred by the doctrine of sovereign immunity. *Keene Corp. v. United States*, No. 80–Civ-

0401 (S.D.N.Y. Sep. 30, 1981), *aff'd*, 700 F.2d 836 (2d Cir.1983).

On September 25, 1981, Keene filed its second suit against the government in the Court of Claims. No. 585–81C (*Keene II*). Again, it demands damages for the defense, settlement, and judgment costs of asbestos related personal injury claims dating back to the 1930's. Further, it alleges a violation of the fifth amendment because the government recouped from Keene payments under the Federal Employees' Compensation Act that it paid to workers suffering from asbestos-related injuries. We must also decide whether the Claims Court has jurisdiction over this case.

The Claims Court interpreted section 1500 as forbidding jurisdiction "if, as of the date an action is filed, plaintiff has pending in another federal court the same claim." 17 Cl.Ct. at 155.

> The jurisdictional inquiry targets the date of filing in the Claims Court, not some subsequent date, such as the date on which the Government is made aware of the antecedent action, or the date on which the Government invokes section 1500 seeking to dismiss the Claims Court action, or the date on which the Claims Court acts. Therefore, a plaintiff cannot cure a want of jurisdiction in the Claims Court by voluntarily or involuntarily dismissing its parallel action, or even by suffering a court-ordered termination on the merits.

*Id.* (citation omitted). The court concluded that under the standard announced in *Johns–Manville Corp. v. United States*, 855 F.2d 1556 (Fed.Cir.1988), the complaints of each appellant in both the district courts and the Claims Court were based on a "homogeneity of operative facts." 17 Cl.Ct. at 156. It dismissed them, as well as those of Fireboard Corporation, H.K. Porter Company, Inc., and Raymark Industries, Inc., who have not appealed, because a case based on the same facts was pending in another court as of the date each plaintiff filed its Claims Court action. The complaint of GAF Corporation, an amicus curiae here, was not dismissed because of an exception to section 1500 set out in *Tecon*

*Engineers, Inc. v. United States,* 343 F.2d 943, 170 Ct.Cl. 389 (1965).

In the order accepting the suggestion for this rehearing in banc, 926 F.2d 1109, 1110 (Fed.Cir.1991), we directed the parties to address the following questions:

a) Whether the term "has pending" as used in 28 U.S.C. § 1500 (1988) can be properly construed to mean pending at the time the Claims Court first entertains and acts on a Government motion to dismiss (or its equivalent), regardless of when the Claims Court suit was actually filed; or whether the term "has pending" is properly construed to mean pending at the time when the Claims Court suit was filed;

b) Whether the case of *Tecon Engineers, Inc. v. United States,* 343 F.2d 943, 170 Ct.Cl. 389 (1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966) should be overruled;

c) Whether a petition for writ of *certiorari* is a "suit or process against the United States" as that phrase is used in § 1500;

d) Whether the rule announced in *Johns–Manville Corp. v. United States,* 855 F.2d 1556 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989), for determining what is a claim under § 1500 should be reconsidered, and if so, what should be the proper rule.

### Discussion

#### I.

The statutory history is fairly straightforward. During the Civil War, Congress passed the Captured and Abandoned Property Act of 1863, ch. 120, 12 Stat. 820, which allowed property in the Confederate states to be seized and used by the government for war purposes. If the property

was not so used, it was sold and the proceeds deposited in the Treasury. *Id.* ch. 120, § 2, 12 Stat. 820. Claimants to the property could recover any proceeds from its sale if they filed in the Court of Claims, proved ownership, and proved by a preponderance of the evidence that they had not aided or provided comfort to the rebellion. *Id.* § 3; 12 Stat. 820.

Most of the claims were for cotton seized during the war. *See, e.g., Whiteside v. United States,* 93 U.S. 247, 23 L.Ed. 882 (1876). These so-called "cotton claimants" had a hard time proving that they had not aided the confederacy and therefore their chances for recovering the proceeds from the sale of their cotton were slim. To better their chances, they filed suit against federal officers in the state or federal district courts, as well as against the United States in the Court of Claims. In 1868, Congress sought to put an end to this practice by enacting the predecessor to section 1500:

Sec. 8. And be it further enacted, That no person shall file or prosecute any claim or suit in the court of claims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced and has pending any suit or process in any other court against any officer or person who, at the time of the cause of action alleged in such suit or process arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act.

Act of June 25, 1868, § 8, 15 Stat. 75, 77. On the floor of the Senate, the sponsor, Sen. Edmunds of Vermont, read the proposed bill [1] and then added:

and has pending, *or shall commence and have pending,* any suit or process in any other court against any officer or person who, at the time of the cause *as above* alleged in such suit or process arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now

---

1. The text of the proposed bill, as read by Senator Edmunds on the floor of the Senate, is as follows:

Sec. 8. And be it further enacted, That no person shall file or prosecute any claim or suit in the Court of Claims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced

The object of this amendment is to put to their election that large class of persons having cotton claims particularly, who have sued the Secretary of the Treasury and the other agents of the Government in more than a hundred suits that are now pending, scattered over the country here and there, and who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that.

81 Cong.Globe, 40th Cong., 2d Sess. 2769 (1868). From this, the only legislative history, we see that the statute was intended to force plaintiffs to choose between pursuing their claims in the Court of Claims or in another court, "[t]he object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts." Thus, the claimants would not be able to "put the Government to the expense of beating them once in a court of law" and then try the question again in the Court of Claims. The statute also ameliorated the consequences of the unavailability of the defense of res judicata from cases against a federal officer in cases against the government itself, and vice versa.

Section 8 was thereafter incorporated into the Revised Statutes of 1874. The few changes made to it then were not intended to alter its meaning in any way. 2 Cong. Rec. 129 (daily ed. Dec. 10, 1873) (statement of Rep. Butler). Section 8 was renumbered as section 1067 and provided:

> Sec. 1067. No person shall file or prosecute in the Court of Claims, or in the Supreme Court on appeal therefrom, any claim for or in respect to which he or any assignee of his has pending in any other

court any suit or process against any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, mediately or immediately, under the authority of the United States.

Revised Statutes of the United States, Title 13, § 1067, ch. 21, 18 Stat. 197 (1874). After the turn of the century, section 1067 was adopted without change as section 154 of the Judicial Code of 1911. Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1135, 1138 (codified at 28 U.S.C. § 260 (1940)).

As part of the revision of the Judicial Code in 1948, Congress essentially reenacted section 154. The new statute read:

> The Court of Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Act of June 25, 1948, ch. 646, 62 Stat. 942 (codified at 28 U.S.C. § 1500 (1948)). Thus, three changes were made to the statute. First, the language "or in the Supreme Court on appeal therefrom" was deleted as "unnecessary." Reviser's Notes, 28 U.S.C. § 1500, p. 1862 (1948). Second, the phrase "against the United States" was added, making it clear that dual litigation against the United States, as well as against a federal officer, was barred. *See Matson Navigation Co. v. United States*, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932). The third change was that the language "No person shall file or prosecute" was replaced by "The United States Court of Claims shall not have jurisdiction," confirming the jurisdictional bar against the Court of Claims earlier set out by the Supreme Court in *Ex Parte Skinner & Eddy Corp.*,

---

pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act.

81 Cong.Globe, 40th Cong., 2d Sess. 2769 (1868) (emphasis added). The only changes between

the statute as proposed and as enacted is the unexplained deletion and substitution of the underscored text.

265 U.S. 86, 95, 44 S.Ct. 446, 448, 68 L.Ed. 912 (1924). Appropriately, the only note accompanying the new statute states that any changes were "in phraseology" only. Reviser's Notes, 28 U.S.C. § 1500, p. 1862 (1948). The most recent change to section 1500 in 1982 merely reflected the establishment of the Claims Court in place of the Court of Claims by substituting the former name for the latter. Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 40.

## II.

By comparison with the history of the statute, the attendant judicial development was erratic. In *Corona Coal Co. v. United States*, 263 U.S. 537, 540, 44 S.Ct. 156, 156, 68 L.Ed. 431 (1924), the appellants complained that they were forced to file suit in a district court after they appealed to the Supreme Court from the Court of Claims or else their district court action would have become time barred. Therefore, they argued, their actions were not "within the spirit of § 154 properly construed." [2] The Court responded that "the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we are not at liberty to add an exception in order to remove apparent hardship in particular cases." *Id.* It dismissed the appeal.

In *British American Tobacco Co., Ltd. v. United States*, 89 Ct.Cl. 438 (1939), the Court of Claims declined two arguments now urged by appellants, which we address more fully below. First, the court rejected the notion that the word "claim" referred only to the legal theory on which a case is brought as opposed to the subject matter of the suit. *Id.* at 440. So, even though a district court action may sound in tort and the one in the Court of Claims may sound in contract, if they are based on the same operative facts, they are the same claim. *Id.* Second, it was irrelevant that a district court action pending when plaintiff filed

suit in the Court of Claims was dismissed before the Court of Claims ruled on the motion to dismiss; "there is no merit in the contention now made by plaintiff that this court has jurisdiction and that plaintiff is now entitled to prosecute the claim presented by the petition in this court for the reason that the suit in the District Court has been dismissed and is not now pending." *Id.* at 441.

When first presented the question, the Court of Claims also held that under section 1500 actions filed in other courts *after* Court of Claims petitions were filed divested it of jurisdiction. In *Maguire Industries, Inc. v. United States*, 86 F.Supp. 905, 114 Ct.Cl. 687 (1949), it held that it had no jurisdiction where subsequent to filing a petition in the Court of Claims, plaintiff appealed a Tax Court decision to the court of appeals. Likewise, *Hobbs v. United States*, 168 Ct.Cl. 646 (1964), held that there was no jurisdiction where the day after filing its Court of Claims petition, plaintiff filed an appeal of an administrative decision dealing with the same facts in a court of appeals.

The Court of Claims recognized that section 1500 was intended to protect the United States from having to defend two lawsuits over the same matter simultaneously. *Wessel, Duval & Co. v. United States*, 124 F.Supp. 636, 637, 129 Ct.Cl. 464 (1954); *Frantz Equipment Co. v. United States*, 98 F.Supp. 579, 580, 120 Ct.Cl. 312 (1951). Relying on the explicit language of section 1500, it held that its jurisdiction over a case could not be dependent on whether or not a district court had jurisdiction, even if the statute of limitations may have run in the Court of Claims. *Frantz*, 98 F.Supp. at 580. And because section 1500 is purely jurisdictional, there is no basis "for finding saving exceptions unless they are made explicit." *Wessel, Duval & Co.*, 124 F.Supp. at 638 (quoting *De La Rama S.S. Co. v. United States*, 344 U.S. 386, 390, 73 S.Ct. 381, 383–84, 97 L.Ed. 422 (1953)).

**2.** As discussed, section 154 is the predecessor of section 1500 and included appeals to the Supreme Court. Therefore, the effect on jurisdiction over cases pending in the Court of Claims and appeals pending in the Supreme Court when an action in another court had been filed was the same.

Notwithstanding all this, in *Casman v. United States*, 135 Ct.Cl. 647 (1956), the Court of Claims found an exception to section 1500's clear mandate. It sustained jurisdiction over a former government employee's petition for back pay even though a suit for restoration to duty was pending in a district court. The court rationalized that the types of relief sought in the two courts were "entirely different" and that therefore section 1500 was inapplicable. *Id.* at 650.

In *Tecon*, 343 F.2d 943, the Court of Claims again succumbed to revision of section 1500 and held that a complaint filed in district court *after* a petition is filed in the Court of Claims did not defeat jurisdiction. The court tried to justify this by stating that "[f]or the most part" its earlier precedent involved "situations where suit was filed in another court prior to, or simultaneous with, the filing of the petition in this court." *Id.* at 950 (footnotes omitted). To the contrary, however, as we have seen, in *Hobbs*, the other suit was filed one day *after* the Court of Claims petition. In *Maguire Industries*, cited as an example of a case in which the filing in the other court was *before* the Court of Claims petition, the event which ousted the Court of Claims of jurisdiction under section 1500 was the appeal of a Tax Court decision *subsequent* to the filing of the Court of Claims petition.

The facts underlying *Tecon* probably explain the court's desire to retain jurisdiction. Taxpayers sued in the Court of Claims for a refund of federal income taxes and civil fraud penalties. After much discovery, several pretrial conferences, and several trial postponements, plaintiffs filed the same claims in a district court and then moved the Court of Claims to dismiss its case under section 1500. An exasperated Court of Claims retained jurisdiction so it could dismiss the case with prejudice for failure to prosecute. We suspect this abuse of process and vexatious litigation would have been appropriately punished by the district court if this breach of jurisdictional jurisprudence had not intervened. We are quite certain that a district court would not hesitate to invoke Federal Rule of Civil Procedure 11 if faced with this kind of conduct today. *See also* 28 U.S.C. § 1927 (1988).

In *Brown v. United States*, 358 F.2d 1002, 1003, 175 Ct.Cl. 343 (1966), plaintiffs, a widow and surviving children, claimed their rice acreage allotments were so reduced as to amount to a governmental taking without compensation. They also filed their complaint in a district court. The government successfully moved for dismissal pursuant to section 1500, but when the district court dismissed the plaintiff's case for lack of jurisdiction, the Court of Claims reinstated its case, because "[i]n this situation, we do not believe that 28 U.S.C. § 1500 requires us to deprive plaintiffs of the only forum they have in which to test their demand for just compensation." *Id.* 358 F.2d at 1004.

Without discussing *Brown*, the Court of Claims crafted another exception to section 1500 in *Hossein v. United States*, 218 Ct. Cl. 727 (1978). There, the plaintiff filed a three count complaint in the Court of Claims and contemporaneously filed suit in a federal district court on the same claim. Because count II alleged negligence and count III requested specific performance, the Court of Claims dismissed them. But because count I could be read to allege a contract implied in fact, the court retained jurisdiction but stayed consideration of the count "for reasons of comity and avoidance of piecemeal litigation," until the federal district court ruled. *Id.* at 729.

Recently, we revisited section 1500 in *Johns–Manville Corp. v. United States*, 855 F.2d 1556, and held that for the purposes of section 1500, two lawsuits involve the same "claim" if they are based on the same operative facts. After discussing the meaning of section 1500, we responded to Johns–Manville's arguments that our holding was unfair: "[p]rinciples of equity do not support finding jurisdiction exists. A court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *Id.* at 1565. We also held that a prior-filed, but stayed, district court action is "pending" within the contemplation of section 1500. *Id.* at 1567. But *Boston Five Cents Savings Bank,*

*FSB v. United States,* 864 F.2d 137, 139 (Fed.Cir.1988), heavily depended on the *Casman* and *Hossein* exceptions when it held that because a declaratory judgment was sought in the district court and monetary damages in the Claims Court, both suits could be maintained even if based on the same operative facts.

## III.

As can now be seen, section 1500 is rife with judicially created exceptions and rationalizations to the point that it no longer serves its purposes: to force an election of forum and to prevent simultaneous dual litigation against the government. It is a rare plaintiff who could not find an exception to his liking if he tried hard enough. Appellants tell us this has come about because of the perceived harshness of the statute, but we see no harm in requiring a party to carefully assess his claims before filing and choose the forum best suited to the merits of the claims and the applicable statutes of limitations. Indeed, a prohibition against suing the government simultaneously in multiple forums, and the likely inability to sue the government twice successively, are even more salutary in this day of excessive litigation than they were back in the Civil War era whence section 1500 comes. Nor is stare decisis a reason not to revisit the jurisprudence encumbering this statute. It is now so riddled with unsupportable loopholes that it has lost its predictability and people cannot rely on it to order their affairs.

 Therefore, we hold today that in accordance with the words, meaning, and intent of section 1500: 1) if the same claim is pending in another court at the time the complaint is filed in the Claims Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on; 2) if the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction, regardless of when the court memorializes the fact by order of dismissal; and 3) if the same claim has been finally disposed of by another court before the complaint is filed in the

Claims Court, ordinary rules of res judicata and available defenses apply.

## A.

We reach our interpretation of the law by considering and rejecting appellants' arguments that we continue the charade that section 1500 has become and engraft another exception on it. We are told that suits against the United States for more than $1,000,000,000 incurred by appellants because of asbestos exposure by workers allegedly following federal contract requirements depend on these arguments. We cannot fault appellants' attempt to test the government's liability. But we cannot countenance the method.

Appellants argue first that section 1500 only bars Claims Court jurisdiction when claimants have other cases pending on the date the Claims Court entertains a motion to dismiss. Thus, cases filed in other courts before the Claims Court complaint, but dismissed for whatever reason before a motion to dismiss is acted on by the Claims Court would be irrelevant. We think such a scheme would not only contradict the meaning and purposes of section 1500 but would create an arbitrary and whimsical jurisdictional result. By the plain language of section 1500, if the same claim is pending in another court when the plaintiff files his complaint in the Claims Court, there is no jurisdiction, period, even if the conflicting claim is no longer pending when a motion to dismiss is brought or considered by the court.

The construction urged by appellants was held to be meritless in *British Am. Tobacco Co. v. United States,* 89 Ct.Cl. at 441. Section 1500 states explicitly and unequivocally that the Claims Court "shall not have jurisdiction" over any claim with respect to which plaintiffs have suits pending in other courts. There is nothing in section 1500 to suggest a free floating jurisdictional bar that attaches only when the government files a motion to dismiss or, worse, when the court gets around to acting on it. Jurisdiction cannot be bestowed by the parties. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de*

*Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). And it is the duty of a court to actively police its jurisdictional boundaries; the state of a trial court's docket or the diligence of the assigned judge has no role in determining the existence of jurisdiction.

As discussed above, the original purpose was to force an election between a suit in the Court of Claims and a suit in another court on essentially the same claim. To permit a plaintiff to maintain cases in both courts until the government moves to dismiss the Claims Court suit or until a judge addresses the motion would compel the government to defend two suits simultaneously, contrary to this recognized purpose of section 1500.

From the language of the original statute, "no person shall file or prosecute any claim ... for or in respect to which he ... has pending any suit or process in any other court," it is readily apparent that any suit *filed* in the Court of Claims when the same claim was pending in another court fell within the statutory bar and had to be dismissed, no matter when the jurisdictional objection was raised and regardless of intervening actions in the conflicting case. When Congress changed the statute in 1948 to read "the Court of Claims shall not have jurisdiction ...," the meaning was not changed; the note observed that changes were in "phraseology" only. No changes in substantive law may be presumed from the 1948 Revision of the Judicial Code "unless an intent to make such changes is clearly expressed." *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 227, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957).

It is fundamental that jurisdiction is established, if at all, at the time suit is filed. *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957). We presume the drafters of section 1500 knew this; if they intended the interpretation urged by appellants, they would have manifested this by appropriate words.

All jurisdictional rules are absolute. The Supreme Court stressed this in implementing section 154 according to the plain meaning in *Corona Coal.* 263 U.S. at 540, 44 S.Ct. at 1157. But in *Brown v. United States,* 358 F.2d 1002, the Court of Claims sought to avoid the supposed harshness of that rule, at least for that case. It reasoned that "Section 1500 was not intended to compel claimants to elect, at their peril, between prosecuting their claim in [the Court of Claims] (with conceded jurisdiction, aside from Section 1500) and in another tribunal which is without jurisdiction," *id.* at 1005. In light of the plain meaning and purpose of the statute, we disagree. It may have seemed unfair "to deprive plaintiffs of the only forum they [had] in which to test their demand," *id.* at 1004, but that does not justify rewriting the statute. *Brown* is overruled.[3] To the extent *Brown* can be read as a case brought in the wrong court, 28 U.S.C. § 1631 (1988) now permits a transfer to the court that has jurisdiction if the transferring court believes it to be in the interest of justice. But that would not have helped here because appellants were in courts with jurisdiction; their complaints based on the Federal Tort Claims Act and Little Tucker Act were dismissed on the merits with prejudice. *See, e.g.,* 581 F.Supp. at 968–80; 655 F.Supp. at 1171–76.

### B.

Section 1500 states that the "Claims Court shall not have jurisdiction of any claim ... in respect to which the plaintiff ... has pending in any other court *any suit or process.*" A case filed subsequent to a Claims Court complaint is clearly a "pending ... suit or process." Thus, by the command that the Claims Court "shall not have jurisdiction," upon the occurrence of the triggering event, the filing of suit in another court, the Claims Court is automatically divested of jurisdiction. Congress wanted not to dictate the order in which a claimant files suits in the Claims Court and another court on the same claim, but to discourage him from doing so altogether.

---

**3.** We also overrule cases like *Casman,* 135 Ct.Cl. 647, *Hossein,* 218 Ct.Cl. 727, and *Boston Five Cents,* 864 F.2d 137, which declined to dismiss complaints in the Claims Court when the same claim was the basis for a case pending in district court.

Otherwise the purpose of saving the government from defending the same claim in two courts at the same time would be defeated. Of course, it is axiomatic that once jurisdiction attaches, subsequent activities by the parties do not affect it. *Mollan v. Torrance*, 22 U.S. (Wheat) 537, 539, 6 L.Ed. 154 (1824). But the result here occurs by operation of law.

We are today undertaking a comprehensive effort to set out the proper interpretation of a jurisdictional statute, a matter that does not require a pointed dispute between parties. Courts are obliged to resolve jurisdictional questions on their own even if parties do not raise them. In the course of this interpretative effort, if prior cases are seen as inconsistent, it is incumbent on the court to acknowledge their nonviability. For that reason we revisit *Tecon*, 343 F.2d 943, an aberrational case which stands astride the path to a proper interpretation of section 1500 as it pertains to a post Claims Court filing in another court.

Our rule comports with cases from both the Supreme Court and the Court of Claims prior to, but ignored by, *Tecon*, as laid out above. *Corona Coal*, 263 U.S. 537, 44 S.Ct. 156, dismissed an appeal from the Court of Claims to the Supreme Court under section 154 because the plaintiff had filed suit in district court on the same claim after the appeal was lodged. *Hobbs*, 168 Ct.Cl. 646, and *Maguire Industries*, 86 F.Supp. 905, are to the same effect.

*Tecon* erroneously relied on the deletion of the words "or shall commence and have pending" from the original bill proposed by Sen. Edmunds as section 8 of the Act of June 25, 1868. 343 F.2d at 947. Aside from the fact that there is no indication why section 8, as enacted, did not include this language, its deletion did not change the plain meaning of the statute; it was superfluous. Since pertinent changes to the statute that came later were in phraseology only, its meaning from the beginning is that the Claims Court loses jurisdiction when the same claim is filed in another court. *Tecon* is overruled.

## IV.

That the word "claim" does not refer to a legal theory, contrary to appellants' argument, but to a set of underlying facts, comports with the language and history of section 1500. As we discussed in *Johns–Manville*, 855 F.2d at 1561, the cotton claimants were not able to bring their lawsuits in the Court of Claims and the other courts on the same theory.[4] Therefore, to accept appellants' argument would be to interpret section 1500 in a way that would have rendered it ineffective against the very abuse it initially targeted. Courts strive to avoid nonsensical interpretations. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982).

Appellants base much of their argument against *Johns–Manville*, that we have given section 1500 "an unjustifiably broad interpretation," on the perceived unfairness of the concept that claims are the same when they involve the same operative facts. But once again, we cannot extend jurisdiction in the interest of equity. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). Further, section 1500 states that appellants cannot have pending any Claims Court claims "for or in respect to which" they had claims pending in district courts. This precludes the argument that the facts must be precisely the same at all events. The question in *Johns–Manville* was whether the Tucker Act claim was "in respect to" the tort claim in the district court. We reaffirm that, correctly construed, section 1500 applies to all claims on whatever theories that "arise from the same operative facts." 855 F.2d at 1567. For example, in this case, all of appellants' claims are founded on or "arise from" personal injuries suffered by work-

---

4. A cotton claimant would have had to bring his Court of Claims action against the United States under the Captured and Abandoned Property Act of 1863, ch. 120, § 3, 12 Stat. 820, while he would have had to bring his district or state court action against a federal agent under a tort theory. *Johns–Manville*, 855 F.2d at 1561.

ers, even though the complaints allege various theories of recovery. A contrary conclusion would permit plaintiffs to evade the strictures of section 1500 by drafting complaints in separate suits based on minor differences in facts which, in reality, relate to the same dispute.

Indeed, the meaning of "claim" has never really been otherwise. As far back as 1939, the Court of Claims stated emphatically that the meaning of claim was not dependent on the legal theory proposed. *British Am. Tobacco Co. v. United States,* 89 Ct.Cl. at 440; *see also Los Angeles Shipbuilding & Drydock Corp. v. United States,* 152 F.Supp. 236, 238, 138 Ct.Cl. 648 (1957). We decline to disturb either this precedent or *Johns–Manville.*

## V.

■ On June 1, 1989, when the Claims Court dismissed Eagle–Picher's complaint, a petition for writ of certiorari was pending in the Supreme Court pertaining to the dismissal of Eagle–Picher's Federal Tort Claims Act and Little Tucker Act suit in the Western District of Washington. *Lopez v. Johns–Manville,* 649 F.Supp. 149 (W.D.Wash.1986), *aff'd sub nom. Lopez v. A.C. & S., Inc.,* 858 F.2d 712 (Fed.Cir.1988), *cert. denied,* 491 U.S. 904, 109 S.Ct. 3185, 3186, 105 L.Ed.2d 694 (1989). Eagle–Picher argues creatively to the contrary, but there is no question that a petition for writ of certiorari is a "pending ... suit or process." 28 U.S.C. § 1500. Eagle–Picher says a petition for a writ of certiorari is merely a request to review cases from the court of appeals for error, it is not directed against the government. Nor is the case "pending" any longer because the lower court judgment is not stayed. But a certiorari petition to the Supreme Court is unarguably a process, if not a suit. And it is a process against the respondent, not the court of appeals. The government was the respondent in *Lopez;* the court of appeals stood indifferent to whether the petition was granted or denied. Finally, the absence of a stay is irrelevant, and does not change the character of the papers in the Supreme Court. Judgments of district

courts are not stayed either, absent a motion, but that does not take them outside the scope of section 1500.

Our holding today that cases pending in other courts on the date of filing in the Claims Court divest that court of jurisdiction renders this question secondary, if not moot. Eagle–Picher had cases pending in other courts when it filed its Claims Court action; therefore that action was properly dismissed regardless of the petition for writ of certiorari. Nevertheless, having posed the question when ordering rehearing in banc, and because the matter is integral to the interpretation of a jurisdictional statute, as we discussed earlier, we are constrained to explain the role of a petition for certiorari in the context of this scheme.

## VI.

■ The Claims Court dismissed UNR's and Eagle–Picher's suits because both had pending district court cases against the government when they filed their Claims Court complaints. Because we reaffirm our view in *Johns–Manville* that claims are the same if they involve the same underlying facts, and because we have no dispute with the Claims Court's factual analysis of UNR's and Eagle–Picher's claims, 17 Cl.Ct. at 156, we affirm the dismissal of their complaints.

Keene says that even under *Johns–Manville,* the facts underlying its first petition in the old Court of Claims (*Keene I*) are not the same as the facts at issue in *Miller,* and its voluntary dismissal in *Miller* renders it a nullity. We think not. Keene's voluntary dismissal of the third party complaint is irrelevant because dismissal did not occur until after Keene filed its Court of Claims petition. The complaint was pending when *Keene I* was filed; therefore, the Claims Court has no jurisdiction. And we have no quarrel with the Claims Court determination that the underlying facts in *Miller* and *Keene I* are the same.

Keene also asserts that because *Keene II* requests relief different from its indemnification suit in the Southern District of New York, the Claims Court has jurisdiction.

But this relies on the exception *Casman* opened up, and as of today, *Casman* and its progeny are no longer valid.

Finally, appellants ask that any decision on section 1500 inconsistent with their arguments be applied prospectively. But we are not at liberty to so limit our judgment. As early as 1807, Chief Justice Marshall said that "courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction." *Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 93, 2 L.Ed. 554 (1807). Later, the Supreme Court admonished that "[c]ourts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850). And only recently, the Court cautioned that courts have no authority to reach the merits of a case in the absence of subject matter jurisdiction, even if they perceive it to be "in the interest of justice" to do so. *Christianson,* 486 U.S. at 818, 108 S.Ct. at 2178.

The Claims Court is absolutely without authority to decide any case which does not fit within its statutory grant of jurisdiction. Because we decide today that section 1500 precludes the Claims Court from exercising jurisdiction over these claims, we cannot direct it nevertheless to address the merits, even if the parties otherwise may incur hardship. "A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981). We are not unaware of the detriment parties might suffer after spending years litigating, only to find that the chosen court lacks jurisdiction. But we must abide by the "age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *Christianson,* 486 U.S. at 818, 108 S.Ct. at 2178; *see also Johns–Manville,* 855 F.2d at 1565.

We have no discretion to apply this judgment only prospectively.

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), is not to the contrary. The Supreme Court there declined to retroactively apply the effect of its declaration that the Bankruptcy Act of 1978 was unconstitutional because this "would surely visit substantial injustice and hardship on those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts," and this decision was "an unprecedented question of interpretation of Art. III."[5] *Id.* at 88, 102 S.Ct. at 2880. To do otherwise would have created chaos in the bankruptcy system and the Court expressly gave Congress a time certain by which to fix the constitutional problem. But in keeping with the teaching of *Firestone Tire* and *Christianson,* it did not permit the bankruptcy judges to continue to perform the forbidden duties even in the case before it. *Id.* at 87 n. 40, 102 S.Ct. at 2880 n. 40. That is to say, it prospectively declared the Act unconstitutional and the courts without jurisdiction, but it did not nevertheless allow the case to be decided on the merits, as we are urged to do here. And there is a significant difference between the reliance on a clear congressional grant of jurisdiction in *Northern Pipeline,* and the activities of these appellants who were trying to circumvent section 1500.

### Conclusion

Accordingly, the judgment of the Claims Court is affirmed.

AFFIRMED.

NIES, Chief Judge, additional views.

I join the majority opinion holding that section 1500 precludes the U.S. Claims Court from exercising jurisdiction over any claim which is pending in another court. I write here because of my view of other precedent, not discussed by the majority, facing those who seek (1) relief obtainable

---

**5.** Indeed, only a plurality of the Court concluded the Act was unconstitutional in all its ramifications. A majority was reached only for the unconstitutionality of the exercise of Article III

powers over traditional actions at common law by Article I judges. *See* 458 U.S. at 91, 102 S.Ct. at 2882 (Rehnquist, J., concurring in judgment).

only outside the Claims Court, and (2) relief obtainable only within the Claims Court. If those litigants fail to complete litigation in one forum prior to the running of the statute of limitations in the other, they will be confronted with the decision of Court of Claims in *Ball v. United States,* 137 F.Supp. 740 (1956), which held that the pendency of a suit in district court could not toll the running of the statute of limitations on the cause of action in the Court of Claims. However, the Court of Claims left open the question whether the *Ball* plaintiff was foreclosed from pursuing both actions concurrently. A few months later, the Court of Claims in *Casman v. United States,* 135 Ct.Cl. 647 (1956) created the exception to section 1500, overturned today, that suit in the Court of Claims was permitted where the relief sought in a district court was equitable in nature and could not be obtained in the Court of Claims.

While technically *Ball* preceded *Casman,* I believe the two cases are interdependent. Thus, in light of today's ruling on *Casman,* I believe the precedent of *Ball* is seriously eroded. Moreover, *Ball* would require revisiting in any event because of the recent decision of the Supreme Court, *Irwin v. Veterans Admn.,* — U.S. —, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) holding that equitable tolling may be available in suits against the United States. Where a party has possibly two claims for relief and is barred from asserting them concurrently by section 1500, I do not believe the period allowed for bringing the additional or alternative claim should arbitrarily be cut off or even shortened. Section 1500 does not require such forfeiture. Some cases may be dealt with by the transfer statute, 28 U.S.C. § 1631 (1988). However, as the majority opinion indicates, it would not apply where the merits are litigated. In any event, the option of tolling the statute of limitations should be available to the Claims Court despite the *Ball* decision.

PLAGER, Circuit Judge, dissenting.

I respectfully dissent. I find myself in disagreement with the court on three issues which cause me to come to a different conclusion. They are: (1) the significance of the various amendments to the act, and whether the act is 'plain' on its face or, as I believe, in need of interpretation; (2) the exact purpose of the original act, as Senator Edmunds described it, since I believe that bears importantly on how the act should be interpreted; and (3) whether this is a typical jurisdiction-granting act, with all the rigidity in application that that characterization implies.

In sum, it seems to me that the court reads the governing statute, § 1500, not as it is now written but as it was before the 1948 amendments, and as the court wishes it were today. The court imports into the act a rigid application that is not supported either by the legislative history or the original purpose. I believe that the interests of justice and our responsibility to apply the law as Congress has enacted it require otherwise.

I.

The first of the rules derived by the court from "the words, meaning, and intent of section 1500" is that "if the same claim is pending in another court at the time the complaint is filed in the Claims Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on." Maj. at 1021. As the court explains, "[b]y the plain language of section 1500, if the same claim is pending in another court when the plaintiff *files his complaint* in the Claims Court, there is no jurisdiction, period ..." Maj. at 1021 (emphasis added).

In fact the statute says no such thing. The original 1868 statute began with the phrase "... no person *shall file* or prosecute any claim ..." (emphasis added). However, in 1948 the statute was amended in several respects. One respect was to delete the *shall file or prosecute* language. The statute before us today states something quite different: "The Claims Court shall not have jurisdiction of any claim ... which the plaintiff ... *has pending* in any other court ..." (emphasis added). Different words have different meanings; the

question for the court is not what the statute once meant, but what it means now.

In the original panel opinion in this case, 911 F.2d 654 (Fed.Cir.1990), the panel majority discussed at length the question of the possible consequences of this change, and in particular the problem of determining the *when* implicitly referred to by the *has pending* phrase. We discussed the possible constructions that could be placed on that phrase given the history of the act, and the subsequent history of its interpretation by this court and its predecessor.

The court today by its 'plain language' interpretation ignores the obvious ambiguities the revised language created, and would have us believe that the amendments never happened, in fact or in law. It summarily overrules our prior precedents which struggled—not always successfully—to make sense of the statute. The explanation the court gives for the change made in 1948, and for the summary dismissal of its possible significance, is that it is a change "in phraseology" (quoting the 1948 revisions). That is an undeniable fact, but hardly dispositive of the interpretation question. It is after all the phraseology of the statute that gives us its meaning. I regret that I am unable to see the meaning of the words with the same clarity that the majority does.

The plain meaning rule, when applicable, has important structural effect beyond its rhetorical value. Honestly applied, it tells a court what *not* to look at—legislative debates, committee reports, newspaper commentary and other 'aids' to policy development; the meaning of the law is what the words of the statute say it is. In cases in which a plain meaning exists, it is hard to quarrel with that construct.

This, however, is not a plain-meaning case. Here we have neither plain meaning—the statute as now written simply does not address *when* an earlier-filed case must be pending to invoke a § 1500 bar [1]— nor clear evidence of what the Congress

intended on this issue. Certainly nothing in the statute now speaks of the *time of filing* of the complaint.

The majority suggests we may not find in a change in the wording of a statute any change in the meaning "unless an intent to make such changes is clearly expressed," citing the Supreme Court's opinion in *Fourco Glass*. But it was the very decision in *Fourco Glass* that this court recently held was overturned by a subsequent amendment to the venue statute, even though there was a total absence of evidence of legislative intent to achieve that particular result. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed.Cir. 1990), *cert. denied* — U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991) (a change in the general definitions applicable to venue applies to the specific provisions for venue in patent infringement suits).

The answer to the conundrum posed by § 1500, thus, must be found by ferreting out its underlying policy and applying it to the situation before us. The Supreme Court has recently stated: "It is a well-settled canon of statutory construction that, where the language does not dictate an answer to the problem before the Court, 'we must analyze the policies underlying the statutory provision to determine its proper scope.' " *Bowsher v. Merck & Co., Inc.*, 460 U.S. 824, 831 n. 7, 103 S.Ct. 1587, 1592 n. 7, 75 L.Ed.2d 580 (1983) (quoting *Rose v. Lundy*, 455 U.S. 509, 517, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982)). The statement by Senator Edmunds, the sponsor of § 1500, explaining the purpose of the statute, is "an authoritative guide to the statute's construction." *Bowsher*, 460 U.S. at 832–33, 103 S.Ct. at 1593 (citing *North Haven Board of Education v. Bell*, 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982)).

The majority and I agree, in accord with Senator Edmunds' expressions, that the general purpose of § 1500 is to conserve the Government's limited resources. But

---

1. In *Johns–Manville*, we determined that "the plain meaning of 'pending' includes cases which have been filed but stayed." 855 F.2d at 1567. Unlike the present case, in *Johns–Manville* the earlier-filed action was never *not* pending, and so the plain meaning interpretation therein does not reach the question of "when" an action must be pending to invoke § 1500.

Senator Edmunds in his statement in support of the bill made very clear the precise nature of the problem: there was a large class of persons who sued agents of the Government in suits around the country and then "after they put the Government to the expense *of beating them once in a court of law* they can turn around and try the whole question in the Court of Claims." [2] (Emphasis added.) And as we said in *Johns–Manville,* "[t]he remaining legislative history is devoid of any evidence indicating the legislature's intended purpose of section 1500." 855 F.2d at 1561.

We have then a statute which is less than clear on its face, and the purpose for which must be gleaned from a very limited legislative record. When there are alternative constructions of a statute, it is the court's duty "to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *FBI v. Abramson,* 456 U.S. 615, 625 n. 7, 102 S.Ct. 2054, 2061 n. 7, 72 L.Ed.2d 376 (1982) (quoting *NLRB v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957).

An important purpose, then, of the act—and one that presumably remains important—is to conserve Government resources. In order to achieve this purpose, the Government contends that § 1500 is a *jurisdictional* statute—like the diversity jurisdiction statute—and that like other jurisdictional statutes, the jurisdictional determination must be made by looking to the existence or non-existence of jurisdiction at the time a complaint is filed. Appellants, on the other hand, argue that if there are no other suits pending at the time the Claims Court considers a § 1500 motion, then Claims Court jurisdiction is not barred; since the purpose of § 1500 is to relieve the United States from defending the same claims in two courts *at the same time,* that purpose would only be subverted if a claimant had another claim *presently* pending in another court, not *formerly* pending.

While the Government's theory has a bright-line advantage, it fails in two respects. First, the conclusion that § 1500 is jurisdictional in the usual sense does not withstand analysis. The purpose behind *jurisdictional* statutes, for example the diversity jurisdiction statute, 28 U.S.C. 1332 (1988), or for example the statute that authorizes this court to hear this appeal from the Claims Court, 28 U.S.C. § 1295(a)(3) (1988), is to create jurisdiction in a federal court where none would otherwise exist, i.e. no subject matter jurisdiction.

The purpose behind § 1500, on the other hand, is to save the Government from having to defend the same suit in two different courts at the same time. Section 1500 *takes away* jurisdiction even though the subject matter of the suit may appropriately be before the Claims Court. Operationally these two statutes focus on different issues. The former says, 'ordinarily your subject matter cannot be here, but if you satisfy the requirements of this statute, then you may *go ahead and proceed* in federal court.' The latter says, 'though your subject matter may appropriately be here in the Claims Court, if you come within the proscriptions of this statute, then you *may no longer proceed here.*'

---

**2.** See 81 Cong.Globe, 40th Cong., 2d Sess. 2769 (1868). *Accord, Connecticut Dept. of Children & Youth Serv. v. United States,* 16 Cl.Ct. 102, 104 (1989): "Section 1500 clearly precludes the Claims Court's exercise of jurisdiction over proceedings with similar claims against the United States that were filed previously and remain pending in other courts. The section was enacted over a century ago to avoid the maintenance of suits against the United States in the Court of Claims after a claimant failed to receive satisfaction from suit against the United States elsewhere. At that time a judgment in another court had no res judicata effect in a subsequent suit against the United States in the Court of Claims. [Citation omitted]. The legislative history and cases indicate that section 1500 was created for the benefit of the sovereign and was intended to force an election when both forums could grant the same relief, arising from the same operable facts. *Johns–Manville v. United States,* 855 F.2d 1556, 1564 (Fed.Cir.1988). *The current purpose served by this section is to relieve the United States from defending the same case in two courts at the same time. Id.* at 1562; *Dwyer [v. U.S.]* 7 Cl.Ct. [565] at 567 [ (1985) ]." (Emphasis added.)

Second, the Government's theory fails because it too early cuts off the recourse of litigants who, either because of subject matter or other circumstances, may be found entitled to pursue their claims only in the Claims Court, and who would not otherwise violate the policy behind § 1500. The facts of the present case offer a good example. UNR had third-party complaints against the Government pending in federal district court. Unsure of whether the district court had jurisdiction, and facing a running of the statute of limitations, UNR filed the same claim in the Claims Court. More than two years before the Claims Court entertained and acted on the Government's § 1500 motion to dismiss, the district court dismissed UNR's third-party complaints for lack of jurisdiction.[3] By the time the Claims Court entertained and acted on the Government's § 1500 motion, UNR had no earlier-filed suits pending and had yet to have its day in court. I believe the statute was not intended to operate to preclude UNR from having its day.

The Government warns that any interpretation of § 1500 that varies its focus from the time of filing will unduly burden the United States by forcing it to defend an earlier-filed district court complaint and a Claims Court complaint on the same basic claim at the same time, and would in effect give a plaintiff 'two bites at the apple.' The Government further warns that such interpretation will require the Claims Court to undertake a burdensome analysis to determine whether the earlier-filed suit is pending.

The rule I would favor, however, does not fuel these worries. Claimants are entitled to a day in court. That does not mean, however, that a claimant is entitled to tie up Government resources by forcing it to simultaneously defend itself in two courts. If an earlier-filed action is finally dismissed other than on the merits before the Claims Court entertains and acts on the jurisdic-

tional question, then the Claims Court action will be the only suit pending and the plaintiff will have but one day in court.[4]

If at the time the Claims Court entertains and acts on the jurisdictional question the earlier-filed action is still pending, i.e. not finally dismissed, then § 1500 will bar jurisdiction. Plaintiff will then have to proceed with the earlier-filed action, or come back to the Claims Court, if a statute of repose does not prevent, should its district court action be dismissed. The determination that the Claims Court must make is straightforward. Under this rule it is not possible for a plaintiff to prosecute an action both in the Claims Court and in another court at the same time. This is what § 1500 precludes.

I would adhere then to the rule announced in the original panel opinion: when an earlier-filed district court case is finally dismissed before the Claims Court entertains and acts on a § 1500 motion to dismiss, § 1500 does not bar Claims Court jurisdiction even though the dismissal may have occurred after the filing of the Claims Court action. This is an alternative reading of an ambiguous statutory phrase, and produces a result that comports more nearly with the purpose of the original act and with the dictates of fairness.

## II.

The second rule the court announces today is that "if the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction ..." Maj. at 1021. While the first rule the court derived, discussed above, is at least arguably an interpretation that the statute supports, this rule is without any support in the language of the statute, and inconsistent with the majority's first rule.

---

3. The majority opinion observes that appellants' complaints based on the Federal Tort Claims Act and Little Tucker Act were dismissed on the merits with prejudice; but the other counts in the complaints were dismissed for lack of subject matter jurisdiction.

4. Obviously, if an earlier-filed suit is carried through to final adjudication on the merits and is thus no longer pending at the time the Claims Court considers § 1500 jurisdiction, the action would be subject to res judicata principles.

The statute speaks only to whether the Claims Court has jurisdiction *when the same claim is pending in another court;* nothing whatever is said about a claim that is *not* pending at the time that 'pendingness' is tested. If the majority believes, as we are told, that 'pendingness' is tested at the time the complaint is filed in the Claims Court—that the 'jurisdictional' determination must be made at the time the complaint is filed—then it is at that point that jurisdiction attaches or not. Nowhere does the statute go on to say that jurisdiction, once attached, shall be divested.

Again, the original statute enacted in 1868 had such language—it proscribed both filing and *prosecuting* any claim, in the then-Court of Claims, when the same claim was pending in another court. But again, subsequent amendments to the statute removed that language; the statute no longer contains a proscription against *prosecuting* a claim. And again, the court reads the statute as it once was, and as it wishes it were today.

Furthermore, to reach this result the court implicitly concedes a point it earlier denies—'jurisdiction' under § 1500 turns out not to be, as we are told, a one-time absolute determined at the moment of filing. The Claims Court can have jurisdiction under § 1500—no claim having been filed in another court—and years later lose jurisdiction because of § 1500—a claim having been filed at that later time in some other court. Under the second rule, then, 'jurisdiction' comes and goes, depending on subsequent events. While admittedly the concept of jurisdiction is a slippery one, this ephemeral quality is unusual if not unique among jurisdictional statutes generally.[5] In any event, the court's first and second rules stand on basically inconsistent grounds.

### III.

The third rule announced by the court is that "if the same claim has been finally

disposed of by another court before the complaint is filed in the Claims Court, ordinary rules of res judicata and available defenses apply." Maj. at 1021. This rule is consistent with the broad interpretation placed on the term 'claim' by our precedents, and today reaffirmed by the court. By itself, that interpretation and the rule here announced is not exceptional. When coupled with the application of 'has pending,' as in the first rule, so as to deprive litigants of their day in court, I do not believe that is what Congress intended by this legislation.

Chief Judge Nies would seem to agree. In her separate opinion she suggests that the solution is 'equitable tolling' of any applicable limitations statute that the Government might otherwise invoke. That is a creative alternative, and would accomplish much the same result as the rule I suggest—in effect, it would permit a litigant to learn whether its cause of action properly can be brought in a district court and, if not, still pursue a remedy against the Government in the Claims Court without fear of being barred by the delays inherent in getting that first decision.

### IV.

Congress presumably could have immunized the Federal Government from any liability for its asbestos-related activities; it did not. By general law, Congress has provided the citizens of this country an opportunity to fairly litigate their claims against the United States in the courts of the land. These plaintiffs, through no fault of their own, have not had that opportunity. I do not know whether the Government did anything that would make it liable under the law to these plaintiffs, but I do believe that § 1500 was not intended to deny them the opportunity to find out, and therefore I respectfully dissent.

---

**5.** This second rule is dictum, since none of the claims before the court in these cases arose out of this second fact pattern; they were all cases of filings first in the district courts, and only later in the Claims Court. When a factual issue is not presented to the court, there is no "case or controversy," U.S. Const. Art. III § 2. There is a question whether constitutional authority exists to bind future courts to this second rule. *See 1B Moore's Federal Practice* ¶ 0.402[2], p. 40.