McDERMOTT INCORPORATED,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–9C.

United States Court of Federal Claims.

Jan. 21, 1994.

Stephen T. Owen, Washington, DC, Atty. of Record for plaintiff. William C. Buckhold, Karyn M. Lee, Jennifer J. Zeien, and Fort & Schlefer, of counsel.

Steven J. Gillingham, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. Robert E. Lieblich, Harold A. Cohn and Henry D. Karp, Office of Counsel, Naval Sea Systems Command, of counsel.

ORDER

HARKINS, Senior Judge.

The complaint in this case was filed on January 11, 1993, and on February 22, 1993, plaintiff filed a complaint in the United States District Court for the District of Columbia, Civil Action No. 93–0385. On June 22, 1993, the district court denied defendant's motion to transfer that case to this court, and stayed its proceedings pending final disposition of plaintiff's claims in this docket.

This case is before the court on defendant's motion to dismiss on the ground that the actions both in this court and in the district court are based upon the same operative facts, and therefore this court, under 28 U.S.C. § 1500, is without jurisdiction. All discovery is stayed pending disposition of the Section 1500 issue. See Order, May 25, 1993.

Oral argument was heard on August 25, 1993. Defendant's motion to dismiss under RCFC 12(b)(1), lack of jurisdiction over the subject matter, was denied. Defendant's motion to dismiss was treated as if made under RCFC 12(b)(4), failure to state a claim upon which relief can be granted. See Order, August 25, 1993. During argument it became apparent that additional analysis was needed for disposition of the Section 1500 issue, and supplemental briefing was ordered for that purpose.

In addition to the motion papers listed in the August 25, 1993, order, the following papers are relevant:

Defendant's Motion to Suspend Further Proceedings and Defendant's Supplemental Brief Concerning the Application of 28 U.S.C. § 1500, filed November 8, 1993

Plaintiff's Response in Opposition to Defendant's Motion to Suspend Further Proceedings, filed November 10, 1993

Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Stay Proceedings or, in the Alternative, to Dismiss for Lack of Jurisdiction, with Appendix, separately bound, filed November 15, 1993

28 U.S.C. § 1500 provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

In the asbestos litigation, the Federal Circuit undertook a comprehensive examination of the purpose and case law interpretations of Section 1500, specifically overruled several cases that had created exceptions to the statute's limitations, and announced rules applicable to the words, meaning, and intent of the section. The Federal Circuit held:

... 1) if the same claim is pending in another court at the time the complaint is filed in the Claims Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on; 2) if the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction, regardless of when the court memorializes the fact by order of dismissal; and 3) if the same claim has been finally disposed of by another court before the complaint is filed in the Claims Court, ordinary rules of res judicata and available defenses apply.

*UNR Indus., Inc. v. United States,* 962 F.2d 1013, 1021 (Fed.Cir.), *aff'd, sub nom. Keene Corp. v. United States,* —— U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993).

Central to each rule, is the meaning of the words "same claim." In *UNR,* the Federal Circuit reaffirmed its analysis of the word "claim" in *Johns–Manville Corp. v. United States,* 855 F.2d 1556 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). The word claim does not refer to a legal theory, but to a set of underlying facts. Section 1500 applies to all claims that arise from the same operative facts, whatever legal theories are proposed. The remedies sought, nature of relief, or elements of proof are not determinative. *UNR Indus., Inc.,* 962 F.2d at 1023.

*UNR* on its facts involved applications of rule No. 1. On appeal, the Supreme Court affirmed, but specifically excluded from its decision application of rule No. 2, and whether Section 1500 would be implicated where there were two actions based on the same operative facts, but seeking completely different relief. *Keene Corp. v. United States,* —— U.S. ——, —— n. 4, —— n. 6, 113 S.Ct. 2035, 2041 n. 4, 2043 n. 6, 124 L.Ed.2d 118 (1993).

Note 4 states:

We do not decide whether the statute also continues to bar a plaintiff from prosecuting a claim in the Court of Federal Claims while he has pending a later-filed suit in another court "for or in respect to" the same claim. Cf. *Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 343 F.2d 943 (1965), *cert. denied,* 382 U.S. 976[, 86 S.Ct. 545, 15 L.Ed.2d 468] (1966). As the dissenting judge noted below, this case does not raise that issue. *UNR Industries, Inc. v. United States,* 962 F.2d 1013, 1030, n. 5 (CA Fed.1992) (Plager, J., dissenting).

Note 6 states:

Because the issue is not presented on the facts of this case, we need not decide whether two actions based on the same operative facts, but seeking completely different relief, would implicate § 1500. Cf. *Casman v. United States,* 135 Ct.Cl. 647 (1956); *Boston Five Cents Savings Bank, FSB v. United States,* 864 F.2d 137 (CA Fed.1988).

At the argument on August 25, 1993, counsel were requested to file supplemental briefs on the following:

1. Whether the operative facts on the McDermott claim in this court are the same as the operative facts as the McDermott claim in the district court. More narrowly, whether a little bit of factual similarity between the two cases is sufficient to put into operation the divesting procedure in UNR rule No. 2.

2. What is the status of *Tecon Engineers, Inc. v. United States,* 343 F.2d 943 (Ct.Cl. 1965), under the standards that have been established for the analysis of the effect of

dictum on subsequent cases in the same court. More narrowly, whether *Tecon* in fact has been overruled by the Federal Circuit.

Section 1500 serves a dual purpose: "to force an election of forum and to prevent simultaneous dual litigation against the government." *UNR Indus., Inc.*, 962 F.2d at 1021. Identity of claims for Section 1500 purposes is "defined by the operative facts alleged, not the legal theories involved." *Johns–Manville Corp.*, 855 F.2d at 1563. Two lawsuits assert the same claim if they share a common core of operative facts. *Keene Corp.*, —— U.S. at ——, 113 S.Ct. at 2043; *Johns–Manville Corp.*, 855 F.2d at 1567. Section 1500's prohibition against this court's consideration of claims "for or in respect to which" complaints are pending in other courts "precludes the argument that the facts must be precisely the same at all events." *UNR Indus., Inc.*, 962 F.2d at 1023. "A contrary conclusion would permit plaintiffs to evade the strictures of Section 1500 by drafting complaints in separate suits based on minor differences in facts, which, in reality, relate to the same dispute." *UNR Indus., Inc.*, 962 F.2d at 1024.

In analyzing Section 1500's "for or in respect to which" language, the Supreme Court, in *Keene,* held:

> While the latter language does not set the limits of claim identity with precision, it does make clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity providing a corresponding liberal opportunity to maintain two suits arising from the same factual foundation.

*Keene,* —— U.S. at ——, 113 S.Ct. at 2043.

Operative facts in a lawsuit are those on which the legal theories or causes of action are founded. *Johns–Manville,* 855 F.2d at 1563. In *Johns–Manville,* to show the meaning of "same operative facts", the Federal Circuit compared the district court complaint with the complaint filed in the Claims Court. *Id.,* 855 F.2d at 1563. Both actions sought indemnification from the United States for damages connected to suits brought under asbestos litigation. The district court claim was based on a tort theory while the Claims

Court claim rested on a contract theory. *Id.* at 1564. The court examined each complaint and determined that both claims contained ten identical allegations. *Id.* at 1563. In addition, after examining the facts pleaded, the court found the facts overlapped in three important allegations: "(1) the United States compelled compliance with supply contracts and with the Navy's specifications, (2) the United States had control of the shipyard working conditions, and (3) the United States established safety standards in the shipyards but did not follow them." *Id.,* 855 F.2d at 1559. To obtain relief in either forum, the same facts were required to be proven. Application of Section 1500 was upheld.

It is appropriate to compare the complaint in this court with the complaint in the district court. Such comparison follows.

*Court of Federal Claims Complaint in Docket No. 93–9C*

Plaintiff's 65–page complaint seeks relief based upon 13 counts. Jurisdiction is based upon the Tucker Act and the Contract Disputes Act. Substantively, several of the counts overlap or are pleaded in the alternative. Each count is detailed by Plaintiff with specificity.

Count I: Breach of warranty of adequacy and completeness of contract design.

> Plaintiff alleges that the Navy impliedly warranted that its drawings and specifications for the vessels were accurate and adequate, such that Plaintiff could reasonably rely on those Navy designs in its bid preparations. Count I encompasses paragraphs 33–88 and is divided into two subcategories.

> —Subcategory A (¶¶ 36–57) is labeled "Deficient Design" and alleges that the Navy's design contained many latent defects which failed to provide Plaintiff with sufficient information to formulate a realistic proposal. Subcategory A lists 15 separate design deficiencies.

> —Subcategory B (¶¶ 58–88) is labeled "Defective Design" and alleges that the design provided by the Navy was so defective that Plaintiff incurred great delay and expense in remedying such defects. Subcategory B lists 29 separate alleged design defects.

The allegations contained in Count I are fact intensive and overlap between subcategories. For the allegations contained in Count I, Plaintiff requests an amount not less than $20 million.

Count II: Breach of duty not to hinder performance and to cooperate with contractor.

The allegations contained in Count II rest on assertions that the Navy unreasonably interfered with Plaintiff's performance of the T–AGOS 19 contract. Count II lists 13 examples of the Navy's allegedly abusive interference with Plaintiff's contract performance. Moreover, Plaintiff accuses the Navy of bad faith interference with Plaintiff's relations with its subcontractors. Count II encompasses paragraphs 89–106 and seeks not less than $600,000 for damages and delays.

Count III: Constructive change.

Count III incorporates Counts I and II and alleges that all the Navy actions or inactions described in those prior counts constituted constructive changes to the contract entitling Plaintiff to an equitable adjustment to the contract. Plaintiff seeks an increase in the contract price of not less than $33.5 million and an extension of the contract delivery dates to the actual delivery dates.

Count IV: Breach of contract.

Count IV incorporates Counts I and II by alleging that the actions described in those two counts, if shown, prove that the Navy has breached the T–AGOS 19 contract. Plaintiff alleges damages of not less than 33.5 million.

Count V: Cardinal change.

Plaintiff alleges that the actions described in the prior counts required the Plaintiff to perform twice as much work as the Navy had led the Plaintiff to believe from the original solicitation. Plaintiff cites 6 examples and requests damages of not less than $33.5 million and time extensions totaling at least 589 days.

Count VI: Tortious breach of contract—misrepresentation in the inducement.

Count VI incorporates Counts I and II, and Plaintiff alleges that at the time the Navy issued the solicitation for the T–AGOS 19 contract, the Navy knew that its design was incomplete, deficient and flawed. Plaintiff also alleges that the Navy knew that prospective offerors would underestimate their bids due to the flawed design and did nothing to prevent Plaintiff's reliance on the Navy's design. Plaintiff seeks damages of not less than $33.5 million.

Count VII: Concealment.

Plaintiff alleges that prior to issuing the solicitation for the T–AGOS 19 contract, the American Bureau of Shipping and other unidentified sources informed the Navy that its design was deficient. Plaintiff alleges that the Navy did nothing in response to being so informed and seeks not less than $33.5 million in damages.

Count VIII: Inducement by misrepresentation.

Count VIII alleges that the Navy represented to Plaintiff that the vessels would not be constructed pursuant to the military standards employed for the construction of naval warships, but rather T–AGOS 19 would be constructed pursuant to the standards of commercial regulatory bodies. Plaintiff alleges that during performance, the Navy did in fact hold Plaintiff to the military standards and seeks damages of not less than $600,000.

Count IX: Bad faith contract administration.

Plaintiff seeks an amount not less than $600,000 for damages arising from the Navy's allegedly bad faith administration, which constitutes a breach of the Navy's implied covenant of good faith and fair dealing.

Count X: Mutual mistake.

Plaintiff pleads in the alternative, that if the Navy was unaware of the defects in its design, then both parties were mistaken in their belief of the scope of the work and costs involved. Plaintiff seeks not less than $33.5 million.

Count XI: Breach of fiduciary duty.

Plaintiff alleges that the nature of this contract, being one for a prototype vessel, placed upon the Navy a high duty to ensure that its plans were complete and accurate prior to issuing the solicitation.

Count XI incorporates Counts I and II by alleging that these actions show that the Navy breached its duty. Plaintiff seeks damages of not less than $33.5 million.

Count XII: Costs of Request for Equitable Adjustment.

Plaintiff alleges that the Navy's regulations and advice established that Plaintiff is entitled to recover the cost of preparing and submitting an REA. Plaintiff seeks $6 million in damages.

Count XIII: Claims on behalf of subcontractors.

Count XIII seeks $1,790,000 for two subcontractors based on the Navy's alleged breach of warranties and contract.

Relief: Plaintiff places before the court several alternative methods to quantify damages. The requests range from reformation of the T–AGOS 19 contract, to a money judgment based on Plaintiff's total costs, to a money judgment of $33.5 million, to actual damages, interest and costs. The complaint does not request declarative or injunctive relief.

*District Court Complaint in Civil Action No. 93–0385.*

Plaintiff's 39–page complaint seeks injunctive and declaratory relief based upon nine counts. Jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1337. The complaint contains 149 paragraphs. Paragraphs 5–17 identify the parties; paragraphs 7, 8, 9, 10, 11, 12 and 15 reference the SWATH contract. These references include: the obligation to deliver four SWATH vessels [T–AGOS 19, T–AGOS 20, T–AGOS 21 and T–AGOS 22], entitlement to adjustment in the contract price, limitations imposed by 10 U.S.C. § 2405, notice to the Navy of constructive changes, rejection of the notice, action in the Court of Federal Claims [Docket No. 93–9C], and that Navy representatives had informally advised plaintiff that significant portions of its claim for a contract price adjustment were untimely under Section 2405. Paragraphs 18–79 examine the statutory framework of Section 2405. Paragraphs 80–99 examine the Navy's interpretation of Section 2405. Paragraphs 100–149 contain Counts I–IX pertaining to issues surrounding Section 2405 and the Navy's Interim Final Regulations implementing that section.

Count I: Equal protection violation.

Count I alleges that Section 2405 discriminates unlawfully and violates the right to equal protection of law, in that it has no rational justification for singling out U.S. shipbuilders constructing new military ships and subjecting only those contractors to a special limitations statute.

Count II: Due process violation.

Count II alleges that Section 2405 is ambiguous because it fails to provide an explicit definition of the "events" which trigger the running of the 18 month time period. Plaintiff also alleges that this problem is exacerbated by the Interim Final Regulations.

Count III: Section 2405 is a time bar at only the administrative level.

Plaintiff seeks an interpretation of Section 2405 that does not limit a proper tribunal from acting on military shipbuilding contract claims.

Count IV: Interim final regulations are unlawful.

Count IV alleges that the Navy's regulations are not practical and effectively bar meritorious claims that have not ripened sufficiently for assertion under the Contract Disputes Act.

Count V: Interim final regulations are irrational, arbitrary and capricious.

Plaintiff alleges that as interpreted the Regulations fail to construe the twin subsections of Section 2405 in harmony and are based on an underestimation of the CDA.

Count VI: Interim Final Regulations Exceed the Scope of Section 2405.

The Regulations construe Section 2405 to time bar meritorious claims before they have ripened and thus effectively transform a statute of limitations into a statute of repose.

**Count VII: Interim Final Regulations violate Fifth Amendment.**

Count VII alleges that shipbuilders are forced to file claims prior to a claim being final and fully known. Count VII also alleges that the Regulations are void for vagueness.

**Count VIII: Rule-making Authority.**

Count VIII alleges that the Regulations were not promulgated lawfully pursuant to delegated rule-making authority. McDermott alleges that the Navy does not have the authority to issue rules implementing Section 2405.

**Count IX: Retroactivity.**

Count IX alleges that the Navy had no authority to promulgate Regulations having a retroactive effect. In addition, McDermott alleges the Regulations cannot be applied retroactively to modify substantive rights in preexisting contracts.

McDermott seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C. § 701. The complaint in the district court action seeks:

a) a declaratory judgment to declare unconstitutional and unenforceable 10 U.S.C. § 2405;

b) a declaratory judgment to declare the Interim Final Regulations unconstitutional;

c) a declaratory judgment to declare that the Interim Final Regulations were not promulgated lawfully pursuant to delegated rule making authority;

d) a declaratory judgment to declare that the Interim Final Regulations are irrational, arbitrary and exceed the scope of 10 U.S.C. § 2405;

e) a declaratory judgment to declare that the Interim Final Regulations may not be applied retroactively;

f) a declaratory judgment to declare the proper and lawful interpretation of 10 U.S.C. § 2405;

g) a judgment permanently and perpetually enjoining Defendants from continuing or attempting to apply either the Interim Final Regulations or any other construction of § 2405 that is inconsistent with its proper interpretation as declared by the district court;

h) its costs in this action and other proper relief.

The comparison shows that the operative facts applicable to plaintiff's claims in this court differ significantly from the factual allegations applicable to McDermott's district court action. There is some overlap in the materials in the respective complaints. The complaint in the district court in paragraphs 7, 8, 9, 10, 11, 12 and 15 alleges facts that duplicate information in the complaint pending before this court. The district court complaint, however, does not discuss the numerous factual allegations that support the SWATH contract claims. Where so few facts apply to both lawsuits, the overlap is tangential. The claims are not based substantially on the same operative facts and the factual similarity is insufficient to trigger Section 1500.

Unlike the analysis in *Johns–Manville*, the overlap in the two complaints does not involve the same operative facts that are essential to relief in both cases. The few references contained in the district court complaint could not serve as the operative facts in the case before this court. McDermott's district court complaint, however, attacks the validity of 10 U.S.C. § 2405 and could stand on its own without the references to the SWATH contract, which plaintiff asserts relates entirely to the issue of standing to maintain a suit.

The operative facts in the two cases are separate. In this court, the claims are fact specific. The allegations of fact arise out of specific actions or inactions on the part of the Navy. Plaintiff's suit rests on its ability to prove factual allegations, among others, such as: (1) the Navy's design for the distributive systems was defective and deficient in every manner which Plaintiff exhaustively details; (2) the Navy in bad faith interfered with Plaintiff's performance of the SWATH contract; (3) the Navy knew prior to its solicitation for the SWATH contract that its design was incomplete, deficient and flawed; (4) the Navy misrepresented the standards by which

the contract would be measured; (5) the Navy breached it fiduciary duty; (6) the Navy owes for costs involved in submitting an REA; and (7) the Navy is liable to two subcontractors. The crux of the allegations, for which plaintiff seeks monetary relief, rests on a determination of the facts that surround the entire SWATH contract. In the district court, McDermott attacks the legitimacy and validity of 10 U.S.C. § 2405 and the Interim Final Regulations promulgated pursuant to that section. In large measure, the complaint requires legal determinations as opposed to resolution of factual issues. The district court must consider the statute, its legislative history, the Navy's rule making authority, the Interim Final Regulations, legal precedent and the Constitution. The factual assertions made in the claims before the Court of Federal Claims are of little consequence in determining these issues.

In sum, the operative facts of any lawsuit are only those which support the claims or legal theories raised. *See Johns–Manville Corp.*, 855 F.2d at 1563. Other facts may be alleged solely to satisfy prerequisites to maintaining suit in a particular court. The operative facts, which support McDermott's legal theories or claims before the two courts, are entirely different. Neither the allegations in McDermott's district court complaint, nor the proof required to establish these allegations, would implicate particulars of the SWATH contract or the contract claims McDermott presents in this court.

Defendant has yet to raise 10 U.S.C. § 2405 here, so no operative fact of the district court complaint is now before this court. Plaintiff maintains that Section 2405, if and when it is raised by defendant, will not be among the operative facts underlying the legal theories that plaintiff advances in this court. In this respect, a Section 1500 inquiry focuses on the plaintiff's allegations in the two complaints, not on the subsequent proceedings. *Id.*

Inasmuch as the two cases are not based on substantially the same operative facts,

UNR rule No. 2 does not become operative. It is not necessary, therefore, to determine the status of the *Tecon* line of cases under UNR, and no decision is made thereon.

Defendant has moved to stay further proceedings in this case pending the decision of the Federal Circuit in *Loveladies Harbor, Inc. v. United States,* No. 91–5050 (Fed.Cir. filed Feb. 11, 1991). It is unlikely that the Federal Circuit decision in *Loveladies Harbor* will provide guidance to resolution of the Section 1500 issue in this case. The two suits in *Loveladies Harbor* present nearly a total overlap of both the facts upon which the complaints were based *and* the relief requested. In this case, very little overlap of any facts occurs; and that overlap does not involve *operative* facts. The relief requested in the two lawsuits is completely divergent. The Federal Circuit's resolution of a Section 1500 case which involves a substantial amount of overlap, such as *Loveladies Harbor,* will not resolve the question of Section 1500's applicability to a case involving "[a] little bit of factual similarity."

On the basis of the foregoing,

IT IS ORDERED:

1. Defendant's motion to stay proceedings is denied.

2. Defendant's motion to dismiss under Rule 12(b)(4) is denied.

3. Defendant shall file its answer to the complaint on or before 30 days from the date of this order.

4. The stay of discovery ordered May 25, 1993, is lifted and defendant shall respond to discovery requested served on April 13, 1993, on or before 30 days from the date of this order.