ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Dawson-Alamo1 JV, LLC | ) ASBCA No. 60590 |
| | ) |
| Under Contract No. FA3047-10-D-0012 | ) |

APPEARANCES FOR THE APPELLANT:     Johnathan M. Bailey, Esq.
                                   Kristin E. Zachman, Esq.
                                     Bailey and Bailey, P.C.
                                     San Antonio, TX

APPEARANCES FOR THE GOVERNMENT:    Jeffrey P. Hildebrant, Esq.
                                     Air Force Deputy Chief Trial Attorney
                                   Erika L. Whalen Retta, Esq.
                                   Justin D. Haselden, Esq.
                                     Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE WILSON
## ON THE GOVERNMENT'S MOTION TO DISMISS COUNT TWO
## OF APPELLANT'S AMENDED COMPLAINT

Dawson-Alamo1 JV, LLC (DA1 or appellant) has appealed the contracting officer's (CO's) deemed denial of its certified claim for work performed, allegedly outside the statement of work (SOW). The Air Force (AF or government) has moved to dismiss count two of appellant's amended complaint, in which appellant raised the allegation of mutual mistake for the first time.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On July 12, 2010, the AF awarded Contract No. FA3047-10-D-0012 to DA1 for miscellaneous construction projects on Lackland Air Force Base, San Antonio, Texas, and related installations. This was a fixed-price, indefinite-delivery, indefinite-quantity requirements contract. (R4, tab 3 at 2, 5-10)

2. On September 22, 2011, DA1 was awarded Delivery Order (DO35) for repair of the interior rooms at Lackland Air Force Base Building 150, valued at $2,500,000 (R4, tab 10 at 1-2).

3. The parties executed Modification No. 01, effective September 30, 2011, adding repairs and increasing the price of DO35 by $500,000 to $3,000,000 (R4, tab 12 at 1-3). Bilateral Modification No. 03, effective March 25, 2013, incorporated a

revised comprehensive SOW and estimate. This revised SOW added repairs to the understructure of Building 150 and increased the price of DO35 by $347,335.14 to $3,347,335.14. (R4, tab 15 at 1-4)

4. Appellant submitted a letter, dated October 29, 2012, to the CO outlining costs related to "the extensive changes to this project that has [sic] been established by [the government] and DA1 JV. All items and tasks are needed to give the end user a useable/workable facility." (Supp. R4, tab 53 at 1) The government, by memorandum dated January 11, 2013, stated "your request is being returned without action. [The Civilian Engineering Center] feels that your letter does not state the facts clearly." (App. supp. R4, tab 145)

5. Appellant submitted a request for equitable adjustment (REA) to the AF, dated January 16, 2013, requesting payment of $465,521.98 for extra materials and work performed under the contract as well as a contract time extension of 210 days (R4, tab 21 at 1). Appellant's REA stated:

> As you review the E4-Clicks[*] cost estimate and compare to the original SOW, you will find that all of the additional work was not included in the original scope of work or awarded task order, but all was coordinated and performed per [the government]'s direction.... Per [two government offices], all items were deemed necessary.... Additional items include, but are not limited to, electrical infrastructure, bracing for the TV's [sic], emergency exit corridor, and communications infrastructure, all of which were not part of the original SOW and E4Clicks cost estimate. Unfortunately several needed items were overlooked in the mechanical portion of the project as well. The original SOW and MOD#1 called for 10 RTU's when the true requirement was for 12 units in this area of the construction including all necessary components.

(Id. at 1-2) Appellant then submitted a certified claim, dated August 8, 2013, to the CO requesting the same amount, arguing its performance of "additional work outside the scope of the awarded task order is a binding change under the Changes clause" (R4, tab 24 at 4). Appellant further noted:

> During the performance of the Project the Government directed DA1 to perform additional work that was beyond the scope of the agreed E4click [sic] estimate presented by

_____

* E4Clicks appears to be a system for producing estimates of project costs.

2

the Government and accepted by DA1 as the scope of the work for the project at the beginning of the project...the Government directed work amounted to $462,521.98.

(*Id.*) DA1 attached its REA to its claim (R4, tab 24 at 65-80).

6. By email dated May 17, 2016, appellant appealed the deemed denial of its claim to the Board.

7. Appellant asserted in its June 28, 2016 complaint that the government directed it to perform work beyond the scope of the SOW, causing it to incur the extra materials and work expenses, and argues that such changes were pursuant to the Changes clause (compl. ¶ 13). However, appellant later amended its complaint to include count two, alleging in the alternative mutual mistake (amended compl. ¶ 16). This legal argument was developed further in appellant's pre-hearing brief, in which appellant requested reformation of DO35 on the basis of mutual mistake, though no longer in the alternative (app. pre-hearing br. at 53-59).

## DECISION

The AF moves to dismiss appellant's mutual mistake allegation, asserting it is a new claim not submitted to the CO, and thus not within the Board's jurisdiction. In its motion, the AF argues mutual mistake requires proof of different elements and requests different relief than the constructive change theory, and that both of these issues indicate the mutual mistake count is a separate claim. As this separate claim was not submitted to the CO for a final decision, the AF posits that the Board lacks jurisdiction over it, and it must be dismissed.

In its response, appellant argues that the operative facts of its original claim provided for mutual mistake and the addition of this new legal theory does not alter the nature of the claim. Thus, it is not a new claim and the Board retains jurisdiction.

The Contract Disputes Act requires all claims by a contractor be submitted to the CO for decision. 41 U.S.C. § 7103(a)(1). "We lack jurisdiction over claims raised for the first time on appeal, in a complaint or otherwise." *Optimum Servs., Inc.*, ASBCA No. 57575, 13 BCA ¶ 35,412 at 173,726 (citing *Versar, Inc.*, ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,957). However, the Board possesses jurisdiction to entertain claims that arise from the same operative facts as those presented to the CO, seek essentially the same relief, and merely assert differing legal theories for that recovery. *ABC Data Entry Sys., Inc.*, ASBCA No. 59865, 16-1 BCA ¶ 36,557 at 178,048 (citing *King Aerospace, Inc.*, ASBCA No. 57057, 16-1 BCA ¶ 36,451 at 177,651). "Matching the elements of [the original legal theory] against the elements of the new legal theories [appellant] posed does not resolve the question

3

whether the claim before us in the amended complaint is the same one presented to the CO." *Public Warehousing Co.*, ASBCA No. 56022, 11-2 BCA ¶ 34,788 at 171,228 (citing *URN Indus., Inc. v. United States*, 962 F.2d 1013, 1024 (Fed. Cir. 1992)). "The introduction of additional facts which do not alter the nature of the original claim...or the assertion of a new legal theory of recovery, when based upon the same operative facts as included in the original claim, do not constitute new claims." *Trepte Constr. Co.*, ASBCA No. 38555, 90-1 BCA ¶ 22,595 at 113,385-86. "In determining a claim's scope, we are not limited to the claim document but can examine the totality of the circumstances. No particular wording is necessary to express it, but the CO must have 'adequate notice' of the basis and amount of the claim." *Sauer, Inc.*, ASBCA No. 60366, 16-1 BCA ¶ 36,565 at 178,101.

In *Todd Pacific Shipyards Corp.*, ASBCA No. 55126, 06-2 BCA ¶ 33,421, the contractor (Todd) had signed a contract for, *inter alia*, servicing various Navy ships in dry dock, including the U.S.S. *Sacramento*. Though Todd incurred expenses to maintain a dry dock large enough to service the *Sacramento*, the Navy decided to decommission the ship early and transfer two vessels which would likely have been serviced at Todd's dry dock to another fleet. In seeking to recover the incurred costs for certification and upkeep, Todd advanced several legal theories, ranging from constructive change to an effective partial termination for convenience and equitable reimbursement under FAR Part 50. In its claim, Todd alleged the Navy had engaged in actions which altered the amount of work Todd could receive under the contract by moving some of the vessels to be serviced to a different fleet. Todd then advanced two new legal theories for the first time in its complaint: provisions for an equitable adjustment allowed in the Cost Accounting Standards, and the Navy's delay in or elimination of the contract's work requirements. *Id.* at 165,684-86. Despite the range of elements and proof the theories would require, we allowed Todd to proceed under the new legal theories as "appellant essentially alleged the operative facts necessary to those theories in its...claim" as well as supporting documents to which the claim referred. *Id.* at 165,688.

We must look at the elements required to prove mutual mistake in order to determine whether the theory springs from the same operative facts alleged in appellant's claim. To prove mutual mistake, appellant must show:

> 1) the parties to the contract were mistaken in their belief regarding a fact;

> 2) that mistaken belief constituted a basic assumption underlying the contract;

> 3) the mistake had a material effect on the bargain; and

4

4) the contract did not put the risk of the mistake on the
party seeking reformation.

*SKE Base Servs. GmbH*, ASBCA No. 60101, 18-1 BCA ¶ 37,159 at 180,901 (citing *National Australia Bank v. United States*, 452 F.3d 1321, 1329 (Fed. Cir. 2006)). Rather than prove these elements, at this stage, appellant's claim must merely allege facts that could plausibly support each element. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Next, we inspect the operative facts alleged to see if they plausibly support each element of mutual mistake.

Similar to *Todd Pacific Shipyards*, we find that it does. The claim and prior documents to which it referred alleged the government had directed appellant to perform additional work beyond the government's SOW, which detailed what work needed to be done to Building 150 at the time of award to achieve the government's desired ends (SOF ¶ 5). This is sufficient to allege, though not prove, that the parties had a different understanding of the work required to complete DO35 and thus were both mistaken. As performance of the SOW was the entire point of DO35, the scope of the SOW qualifies as a basic assumption underlying the contract (SOF ¶ 2). The alleged mistake had a material effect on the bargain as it involved appellant allegedly incurring significant costs it had not accounted for (SOF ¶ 5). Finally, appellant alleges the risk was not on it as to the cost of additional work, as evidenced by the filing of their REA and certified claim (*id.*). The government was certainly on notice that appellant believed it did not bear any risk of loss for the amount asserted. The government cannot reasonably claim to have lacked notice of the matters alleged and they do not differ materially from the essential nature of and operative facts in appellant's claim to the CO.

Appellant's claim of mutual mistake also requests essentially the same relief as that for constructive change. As the work at issue is already completed, should appellant prevail on its theory of mutual mistake, reformation of DO35 would afford appellant practically the same relief as its original claim. Neither theory would create any new obligations for either party at this point beyond the entitlement to the payment appellant sought in its original claim. *See Envtl. Chem. Corp.*, ASBCA No. 58871, 15-1 BCA ¶ 36,110 at 176,288. We hold count two is not a new claim.

## CONCLUSION

For the reasons stated above, the government's motion to dismiss is denied.

Dated: May 30, 2019

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60590, Appeal of Dawson-Alamo1 JV, LLC, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals